# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **MARSHA ANDREWS** | **CASE NO.  3:23-CV-00866** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SCHOOL BOARD UNION PARISH** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 23] filed by Defendant Union Parish School Board ("School Board"). Plaintiff Marsha Andrews ("Andrews") filed an opposition to the School Board's Motion [Doc. No. 28], and the School Board filed a reply [Doc. No. 31]. Andrews filed a supplemental memorandum in opposition [Doc. No. 37] and the School Board filed a supplemental reply [Doc. No. 43].

For the reasons set forth below, the Motion is **DENIED IN PART** and **GRANTED IN PART.**

## I.    FACTS AND BACKGROUND

On June 27, 2023, Andrews filed a suit seeking damages related to her termination as the School Board's Chief Financial Officer/Business Manager ("CFO").[1] Andrews began employment with the School Board on August 30, 2019, and was terminated on July 12, 2022.[2] As CFO, Andrews's duties included preparing data for the School Board's financial reports, preparing and presenting the budget,

---

[1] [Doc. No. 1].
[2] [Doc. No. 23-1, p. 5].

preparing the annual financial report ("AFR"), and meeting the requirements of the annual audit.[3] Under statute, the AFR must be provided to the Louisiana Department of Education ("LDOE") by September 30th of every year, and failure to timely do so would result in a failed assessment and could result in the withholding of minimum funding.[4] The CFO's job duties further included providing timely records to an external auditor for the annual audit.[5] From the auditor, the report must then be provided to the State by December 31st for the prior fiscal year.[6] Kristy Fine ("Fine") served as the superintendent of the School Board from August 2020 to July 2024 and directly supervised the work of Andrews.[7] Fine states in her affidavit that shortly after Andrews began employment, she realized that Andrews lacked the experience and qualifications required to carry out her responsibilities effectively.[8] Ted Reeves, the Superintendent prior to Fine, brought in Megan Kenly, current CFO of Lincoln Preparatory and former CFO of the School Board, to assist Andrews.[9] LDOE trained Andrews "on matters related to the Budget Form A, Annual Financial Report, Maintenance of Effort ("MOE") calculations, 70% Rule, and other department business."[10] Fine also attests that Andrews was assisted by several other CFOs from nearby schools.[11]

---

[3] [Doc. No. 23-3, p. 1].
[4] [Doc. No. 23-4, p. 16].
[5] [Id. at p. 55].
[6] [Id. at p. 16].
[7] [Doc. No. 23-3, p. 1].
[8] [Id.].
[9] [Id. at p. 2].
[10] [Id.].
[11] [Id.].

In connection with the audits for the 2018–2019, 2019–2020, and 2020–2021 fiscal years, as part of her duties, Andrews communicated with Lori Woodard ("Woodard"), owner of Woodard & Associates and the Engagement Principal, for the audit process.[12] For the 2018–2019 audit, Woodard & Associates identified eight (8) audit findings.[13] The School Board concedes that while Andrews was not responsible for the deficiencies, she was responsible for not taking corrective actions to cure the deficiencies.[14] As for the 2019–2020 audit, Woodard & Associates noted that the accounting records were incomplete, stating "the records provided by the School Board were not reconciled with the general ledger and contained errors and omissions of a material and pervasive nature."[15] Because of this, Woodard & Associates was not able to provide an audit opinion.[16] Despite the September 30th deadline, the audit was not completed until May 31, 2022.[17] A similar issue occurred again during the 2020–2021 audit, when Woodard & Associates was unable to provide an opinion due insufficient information.[18] The report was not completed until October 2022, after Andrews had been terminated.[19]

The 2020 APR report was not completed and submitted to the LDOE until February 2021, five months after the deadline.[20] The 2021 APR report was not filed until December 2021, three months after the deadline, and Steven Stanfield

---

[12] [Doc. No. 23-5].
[13] [Id. at pp. 106–13].
[14] [Id.].
[15] [Id. at p. 147].
[16] [Id.].
[17] [Id. at p. 148].
[18] [Id. at p. 147].
[19] [Id. at p. 148].
[20] [Id. at p. 230].

("Stanfield"), former CFO for the DeSoto Parish School Board and an independent consultant, rather than Andrews, completed the report.[21]

In the Spring of 2021, Fine placed Andrews on an Intensive Support Plan ("ISP").[22] The ISP noted that Andrews was not meeting financial assignments in a timely manner and stated that guidance would be provided to her to improve her performance.[23] The ISP also stated that "[i]f the plan is not completed in conformity with its provisions/timeliness upon the completion of the program, then job action will be taken."[24] The listed beginning date was May 5, 2021, and the end date was June 30, 2022.[25] In September of 2021, and at Andrews's request, the School Board entered into a contract with Crossmark Management Group to further train and assist Andrews.[26] Stanfield was hired as a result of this contract.[27] Stanfield testified that he believed Andrews wanted him to complete the duties instead of her and that training her was ineffective.[28] On June 28, 2022, Stanfield emailed Fine and stated that "Marsha acts like she does not know what to do and states that once I show her how, she should be able to take it from there. The result of those statements and actions is causing me to do the work while Marsha sits back and does nothing."[29] Stanfield testified that the audit findings continued and worsened after Andrews

---

[21] [Doc. No. 23-2, p. 16].
[22] [Doc. No. 23-3, p. 14].
[23] [Id.].
[24] [Id.].
[25] [Id.].
[26] [Doc. No. 23-4, pp. 175–85].
[27] [Doc. No. 23-2, p. 2].
[28] [Doc. No. 23-4, pp. 77–78].
[29] [Id. at p. 202].

came on board and that he believed it was appropriate to terminate her for her poor job performance.[30]

In March of 2022, Andrews's father became ill, and on June 16, 2022, Andrews submitted a request for intermittent leave under the Family Medical Leave Act ("FMLA") to care for her father.[31] Fine sent Andrews a letter stating that her request was flawed under the Department of Labor's standards because no medical certification issued by the family member's health care provider was attached, and that once documentation was provided, a decision would be made.[32]

On June 27, 2022, a little over a week after Andrews's intermittent FMLA request, Fine states that she met with Andrews and "expressed displeasure with her failure to successfully complete the [ISP] program," informed Andrews that job action was being considered, and gave Andrews the opportunity to resign.[33] Andrews did not accept the resignation.[34]

On July 11, 2022, Andrews sent Fine another letter requesting full FMLA leave with proper medical documentation provided.[35] The same day, Andrews received a termination notice.[36] Requested leave was granted as of July 12, 2022, for June 16, 2022, through August 20, 2022, and Andrews was notified that accumulated sick leave and/or annual leave was to be used before any extended sick leave days.[37]

---

[30] [Doc. No. 23-4, pp. 88–89].
[31] [Doc. No. 1, p. 2].
[32] [Doc. No. 23-2, pp. 18, 20].
[33] [Doc. No. 23-2, p. 4].
[34] [Doc. No. 23-3, p. 4].
[35] [Doc. No. 23-2, p. 19].
[36] [Doc. No. 23-3, p. 40].
[37] [Id.].

Fine contends that she was "seriously considering terminating Ms. Andrews well before she submitted her request for FMLA leave" because she "failed to satisfactorily work with auditors as needed to complete budget reporting documents/duties, complete all budget reporting documents and duties in a timely manner, and meet all deadlines."[38]

The facts that follow relate directly to Andrews's whistleblower claims. To be hired by the School Board, a panel of board members interviews the interviewee.[39] After Andrews was interviewed, Donna Cranford ("Cranford"), a board member and Financial Committee Chairperson, called Andrews to inform her that she had been hired.[40] Andrews alleges as count one that because Cranford called Andrews to inform her that she had been hired and then allegedly improperly influenced Fine to terminate her, a law was violated.[41] However, Andrews states that she has no knowledge of how the panel discusses and hires people and that she assumes it was Cranford, even though Fine told her that "the board [not Cranford specifically] was pressuring her to make a decision."[42] The second count asserts that Fine decreased Rhonda Davis's pay after the parties agreed upon compensation pursuant to the compensation schedule.[43] Andrews's deposition testimony asserts that the decreased pay was actually to Rhonda Davis's assistant, Chaquita Jones ("Jones").[44] Evidence shows that Jones was placed on the wrong salary scale and was overpaid for the

---

[38] [Doc. No. 23-2, p. 4].
[39] [Doc. No. 24, p. 7].
[40] [Id. at 73].
[41] [Doc. No. 24, p. 71].
[42] [Id. at pp. 72, 74,79].
[43] [Doc. No. 23-8, p. 9].
[44] [Doc. No. 24, p. 83].

period of July 2021.[45] Jones inadvertently listed fourteen years of experience.[46] The School Board issued an Employee Recommendation Form at the beginning of the year with a corrected salary adjustment.[47] Moreover, Andrews testified that she never reported this alleged violation.[48] Count three alleges that Fine advanced payment to Rebecca Andrews ("Rebecca"), the interim elementary school principal who converted to EL Coach/Interventionist in June 2021.[49] Essentially, Andrews testified that Rebecca received compensation for a month during which she was not entitled to be paid because a decision was made to start her contract in July, rather than August.[50] Fine and Alicia Nevala, payroll manager,  testified that, to prevent Rebecca from suffering an interruption in pay or retirement, the contract would run from July 1, 2021, to June 30, 2023, rather than from August 1, 2021, to July 31, 2022.[51] Again, Andrews did not report this finding.[52]

On June 13, 2025, the School Board filed the pending Motion asserting that the Court dismiss all claims asserted by Andrews pursuant to the FMLA and the Louisiana Whistleblower Statute, which are related to her termination by the School Board in 2022.[53] Andrews opposes the Motion.[54]

The issues have been briefed, and the Court is prepared to rule.

---

[45] [Doc. No. 23-7, p. 19].
[46] [Id.].
[47] [Id.].
[48] [Doc. No. 24, p. 88].
[49] [Doc. No. 23-8, p. 9].
[50] [Doc. No. 24, p. 91].
[51] [Doc. No. 23-3, p. 6; Doc. No. 23-7, p. 33-4].
[52] [Doc. No. 24, p. 95].
[53] [Doc. No. 23].
[54] [Doc. No. 28].

## II.    LAW AND ANALYSIS

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## B. Equitable Estoppel

The analysis must begin with Andrews's equitable estoppel argument, because, if correct, it would preclude further discussion of many arguments in the School Board's Motion. Andrews argues that the School Board actively represented to her that her leave was approved as FMLA-protected leave, and thus, the School Board is now equitably estopped from claiming that Andrews failed to engage in a protected activity or to assert any defense of non-coverage.[55] The School Board contends that it is not estopped from arguing Andrews failed to establish a *prima facie* case.[56] The School Board further argues that it never actually granted Andrews's

---

[55] [Doc. No. 28-1, p. 14].
[56] [Doc. No. 31, p. 7].

9

FMLA leave; it just applied her accrued sick leave and vacation days to the interim period from June to August of 2022.[57]

The definition and elements of estoppel, as adopted by the Supreme Court, are as follows:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled ... (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Heckler v. Cmty. Health Servs. of Crawford Cnt., Inc.*, 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). The Fifth Circuit has held that the doctrine of equitable estoppel is applicable to claims under the FMLA:

> [A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006). In a subsequent opinion, the Fifth Circuit interpreted its decision in *Minard* to imply the following requirement: "the defendant-employer must have *actually represented* to the plaintiff-employee that her leave was covered and/or that she was protected by the FMLA in order to equitably estop the defendant from arguing in court that the

---

[57] [Id.].

FMLA does not specifically cover the plaintiff-employee and/or her leave." *Ford-Evans v. United Space All. LLC*, 329 F. App'x 519, 527 (5th Cir. 2009) (emphasis added).

Here, the School Board provides evidence that it did not "actually represent" to Andrews that her leave was covered, as set out in *Minard*. The June 20, 2022, letter to Andrews stated that, before FMLA leave could be approved, employees were required to exhaust their accrued sick leave, vacation days, and extended sick leave.[58] Moreover, the letter informed Andrews that no medical documentation had been submitted, and therefore no official decision could be made until it was received.[59] This was the procedure the School Board followed during the interim period from June 16, 2022, to August 20, 2022.[60] To further this point, the School Board's termination letter notes that "requested leave will be granted as of July 12, 2022, for June 16, 2022, through August 20, 2022, only. Accumulated sick and/or annual leave must be used before any [extended sick leave] days are applied."[61]

Thus, there is no evidence that the School Board "actually represented" to Andrews that she was granted FMLA leave. Therefore, the School Board is not estopped from asserting a defense of a lack of entitlement to FMLA leave or of the engagement of protective activity.

## C. FMLA

Because estoppel does not apply, as explained in the analysis above, Andrews

---

[58] [Doc. No. 23-3, p. 18].
[59] [Id.].
[60] [Id. at pp. 18, 40; Doc. No. 23-7, p. 2].
[61] [Doc. No. 23-2, p. 40].

must satisfy her burden for each element in order to establish a *prima facie* case of retaliation and interference. Each will be addressed in turn below.

### i. *Prima Facie* Case of Retaliation

Retaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting framework. *Varise v. H & E Healthcare, LLC*, No. 10–666, 2012 WL 5997202, at *2 (M.D. La. Nov. 30, 2012). To establish a *prima facie* case for FMLA retaliation, Andrews must show that (1) she was a protected under the FMLA, (2) she suffered an adverse employment action, and (3) she either was treated less favorable than a similarly situated employee who has not requested leave or the adverse action was made because she took FMLA leave. *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 317 (5th Cir. 2013). "Once an employee propounds a *prima facie* case of interference or retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Richardson v. Monitronics Int'l. Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). "Thereafter, 'the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.'" *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020) (quoting *Tatum v. S. Co. Servs Inc.*, 930 F.3d 709, 713 (5th Cir. 2019)).

Some courts, in certain FMLA retaliatory discharge cases, have applied the mixed-motive framework where discrimination was not the sole reason for discharge. *See Richardson*, 434 F.3d at 333. However, "the mixed-motive framework only applies to cases in which the employee concedes that discrimination was not the sole reason

for her discharge, but argues that discrimination was a motivating factor in her termination." *Id*. Recently, the Fifth Circuit has stated that the "mixed-motive" standard is unsettled and declined to apply it to cases where both parties failed to brief the issue on appeal.[62] Here, however, both parties brief the issue, so the Court will analyze the case under the mixed-motive framework.

The plaintiff, instead of showing pretext, must merely show that the employer's nonretaliatory reason, although true, is but one of the reasons for its conduct, another of which was retaliation. *Richardson*, 434 F.3d at 333. "If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the retaliatory animus." *Id*.

The School Board concedes that Andrews suffered an adverse employment action, but the School Board asserts that Andrews cannot make a *prima facie* case regarding the first or third element of retaliation under *McDonnell Douglas*.[63]

### a. Protected Activity

The School Board argues that an improper request for FMLA leave does not

---

[62] *See Way v. City of Missouri City*, 133 F.4th 509, 525 n. 26 (5th Cir. 2025) ("We assume without deciding that the but-for standard of causation applies to Way's FMLA retaliation claim. In the FMLA context, whether the heightened 'but-for' standard or the more plaintiff-friendly 'mixed-motive' standard applies is unsettled. *See Decou-Snowton v. Jefferson Par.*, No. 24-30079, 2024 WL 4879466, at *4 n. 2 (5th Cir. Nov. 25, 2024) (per curiam) (unpublished). Because Way can satisfy the heightened but-for standard, and because neither party briefed the issue, we need not decide which standard is appropriate in FMLA retaliation claims. *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 529 n. 4 (5th Cir. 2021)").

[63] [Doc. No. 23-1, p. 16].

qualify as a protected activity.[64] Andrews argues that merely requesting FMLA leave is a protected activity.[65]

In support of its argument, the School Board relies on *Lanier*, where the Fifth Circuit held that Lainer had not engaged in a protected activity because her use of the Employee Assistance Program ("EAP") was not considered a protected activity and "there [was] no evidence that anyone in Lanier's chain of command was aware that she had visited the EAP" to obtain resources for filing an FMLA request. *Lanier*, 527 F. App'x at 317.

The School Board's argument is unavailing. Unlike in *Lanier*, where the employee failed to notify her employer of FMLA leave, Andrews provided Fine with a letter on June 13, 2022, expressly requesting intermittent FMLA leave. Fine acknowledged that Andrews was requesting FMLA leave on June 20, 2022, when she sent a letter back to her requesting proper medical documentation. Moreover, on July 11, 2022, Andrews sent an additional letter expressly requesting full FMLA leave. Whether the request was ultimately improper for purposes of granting FMLA leave is irrelevant to the question of whether making such a request constitutes a protected activity. *See Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297 at *12 (5th Cir. Jan. 19, 2024) (holding that at least verbal notice is sufficient to inform the employer that the employee requires leave for an FMLA-qualifying reason, along with the expected timing and duration of that leave).

Accordingly, Andrews has satisfied element one of her *prima facie* case.

---

[64] [Doc. No. 23-1, p. 16].
[65] [Doc. No. 28-1, p. 16].

### b. Causal Connection

The School Board asserts that Andrews cannot satisfy the third element of her *prima facie* case because timing alone is not sufficient evidence of a causal connection.[66] Andrews contends that "the knowledge of a protected activity, prior work history, and the temporal connection all provide evidence of causation," so summary judgment is improper.[67]

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the [FMLA-protected activity] and the termination." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). But timing alone "will not always be enough for a *prima facie* case." *Id.*

As the record reflects, the temporal connection is exceptionally close. One day after Fine received Andrews's request to take full FMLA leave with proper medical documentation, Fine sent Andrews a termination letter. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark*

---

[66] [Doc. No. 23-1, p. 17].
[67] [Doc. No. 28-1, p. 18].

*Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Court finds that the temporal evidence, when viewed in the light most favorable to Andrews, is sufficient to support a *prima facie* case of retaliation. Thus, *Breeden* and its progeny must support a finding that a same-day termination following a request for leave meets the initial burden of *McDonnell Douglas. Breeden*, 532 U.S. at 273; *see also Baumeister v. AIG Glob. Inv. Corp.*, 420 F. App'x 351, 356 (5th Cir. 2011) (unpublished).

However, when suspicious timing is insufficient to satisfy a plaintiff's *prima facie* case, the plaintiff can meet his or her burden by putting forward circumstantial evidence of discrimination. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). If temporal proximity alone cannot sustain Andrews's burden, Andrews provides limited, but sufficient, additional circumstantial evidence of a causal connection in her Opposition.

It is undisputed that Fine, the individual who terminated Andrews, was aware that Andrews had engaged in a protected activity, as evidenced by Andrews's FMLA letter and Fine's signature on the termination notice. *See Medina v. Ramset Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). Furthermore, no decision to terminate Andrews's employment had been made as of June 27, 2022, when Fine discussed the ISP with her, thereby supporting the inference that Fine's decision to terminate Andrews was not predicated upon any alleged failure to adhere to the ISP plan, but rather was made subsequent to Andrews's request for FMLA leave. This Court finds that, for purposes of summary judgment, Andrews has satisfied her burden of proving causation.

Thus, Andrews has established all elements of her *prima facie* case of retaliation.

### ii. *Prima Facie* Case of Interference

The School Board contends that Andrews cannot establish a *prima facie* case of interference because Andrews was not entitled to take leave, nor did she give proper notice of intention to take FMLA leave because she had not given the proper medical documentation.[68] Andrews contends that first, the School Board is estopped from denying coverage and second, her interference claim arises from the denial of her right to be reinstated to her position following her return from FMLA leave. [69] As analyzed above, the School Board is not estopped from denying coverage, so the inference claim will be discussed below.

To prove an interference claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)). The elements to establish a *prima facie* case of interference are as follows: (1) Andrews was an eligible employee; (2) the School Board was an employer subject to the FMLA's requirements; (3) Andrews was entitled to leave; (4) Andrews gave proper notice of her intention to take FMLA leave; and (5) the School Board denied her the benefits to which she was entitled under the FMLA. *Lanier*, 527 F. App'x at 316. Additionally, the Fifth Circuit has held that "[a]

---

[68] [Doc. No. 23-1, p. 18].
[69] [Doc. No. 28-1, p. 14].

plaintiff must also show that [he] was prejudiced by the interference." *Moreau v. Caddo Par. Dist. Att'y Off.*, No. 5:18-0982, 2020 WL 1494142, at *4 (W.D. La. Mar. 26, 2020) (citing *Downey v. Strain*, 510 F.3d 534, 539 (5th Cir. 2007)). Prejudice exists when an employee loses compensation or benefits by reason of the violation or suffers some loss in employment status. *Jones v. Children's Hosp.*, 58 F.Supp.3d 656, 669 (E.D. La. 2014). Additionally, an interference claim does not require a showing of discriminatory intent. *Id.* at 668.

An employee generally has the right to be reinstated to his previous position or an equivalent position upon his return from FMLA leave. 29 U.S.C. § 2614(a)(1)(A)–(B). However, the FMLA does not impose a strict liability standard requiring employers, in all circumstances, to reinstate employees following their FMLA leave. *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681–82 (5th Cir. 2013). Under the FMLA, an employee is only entitled to those rights to which he would have been entitled had he not taken FMLA leave. *Id.* at 681 (citing 29 U.S.C. § 2614(a)(3)(B)). Thus, Andrews "must actually be entitled to the position to which [s]he seeks reinstatement." *Id.* at 682. "[A]lthough denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had already been extinguished—for legitimate reasons unrelated to his efforts to secure FMLA leave— does not violate the [FMLA]." *Id.* (quoting *Hester v. Bell-Trextron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021)).

Even if the plaintiff makes out a *prima facie* case, she may not overcome a motion for summary judgment if the employer articulates a legitimate non-discriminatory reason for the employment action at issue. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016). To prevail in such a case, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual. *Id.*

Although not expressly argued, the record reflects evidence that Fine had engaged in a conversation with Andrews in which she stated something to the effect that "things happen in life, but employment obligations must still be fulfilled."[70] To determine whether discouragement constitutes interference, this court considers whether the employer's actions would "discourage any reasonable employee from exercising FMLA rights." *Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 293–94 (5th Cir. 2020) (per curiam). A reasonable juror could find that comments of this nature from a supervisor would dissuade a reasonable employee from requesting leave. And if Andrews was indeed wrongfully terminated, she would have been deprived of the benefits of job restoration. *See Jones*, 58 F. Supp. 3d at 669. Therefore, Andrews has established a *prima facie* showing of interference.

### iii.  Legitimate, Nonretalitory Reason and Mixed Motive

As stated above, once the plaintiff establishes a *prima facie* case of retaliation and/or interference, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Richardson*, 434 F.3d at 332.

---

[70] [Doc. No. 23-3, p. 3].

The Court finds that the School Board has provided a legitimate and nondiscriminatory reason for terminating Andrews. First, Andrews's deficient recordkeeping and reporting practices resulted in adverse audit findings, and deficiencies identified in prior audits remained unaddressed. Not only did the initial deficiencies persist, but they also increased in scope in the subsequent year's report. Although Andrews was not responsible for filing the 2018 report or for the deficiencies contained therein, she was responsible for ensuring that those deficiencies were corrected in the following year and failed to do so. Moreover, Andrews failed to provide Woodard & Associates with the necessary information to complete the 2019–2020 report, rendering it incomplete and causing it to be submitted approximately seventeen months late. The same issues continued, and worsened, for the 2020–2021 report. In addition, Fine placed Andrews on an ISP which Andrews contends does not constitute evidence of disciplinary action and did not indicate that she was failing to meet expectations. This contention is without merit as the ISP specifically states, "as a result of financial assignments not being met in a timely manner."[71] It is hard to discern how Andrews would have taken this any other way than a directive for improvement.

The Court finds that the School Board has clearly articulated legitimate, non-discriminatory reasons for Andrews's termination. Pursuant to the mixed-motive framework, the burden shifts back to Andrews to establish that the School Board's stated reason, even if factually accurate, constituted only one of several motives for

---

[71] [Doc. No. 23-2, p. 14].

its decision, and that her exercise of FMLA rights was likewise a motivating factor in her termination. *Richardson*, 434 F.3d at 336.

In this case, the School Board's evidence indicates that Andrews had a history of poor work performance, which is certainly a legitimate reason for termination. Nevertheless, for purposes of summary judgment and under the mixed-motive framework, a jury could reasonably conclude that Andrews's request for FMLA leave was an additional motivating factor in the decision to terminate her—essentially, the final tipping point. During the interim period, there is no evidence that Andrews engaged in any specific instances of poor performance other than the failure to complete the ISP. In *Powers v. Woodlands Religious Cmty. Inc.*, the Fifth Circuit held that the employer had articulated a legitimate, nondiscriminatory reason for terminating Powers. 323 F. App'x 300, 303 (5th Cir. 2009). The burden then shifted to Powers to demonstrate that the employer acted with a mixed motive. *Id*. The Court concluded that the final event preceding her termination—her absence due to a severe spider bite one month after returning from maternity leave—created a genuine issue of material fact as to whether the employer's stated reason actually motivated the termination decision. *Id*.

The parallels here are even stronger. Unlike *Powers*, where the adverse action occurred a month after the employee's return from leave, Andrews was terminated on the very day she requested full FMLA leave. There is a genuine factual issue as to why Fine did not terminate Andrews immediately upon learning that the ISP had not been properly completed or during their conversation on June 27, 2022.

21

Consequently, a factfinder could conclude that Fine's decision to terminate Andrews on July 11, 2022, was not based on any claimed failure to follow the ISP plan but instead was made the day after Andrews requested FMLA leave. Further, whereas the final event in *Powers* was an unexpected medical absence, the precipitating event here was Andrews's invocation of FMLA rights. Examining the evidence presented in the light most favorable to Andrews, the Court concludes that a genuine issue of material fact exists as to whether the School Board's purported reason was what actually motivated it to terminate Andrews.

Thus, the Motion for Summary Judgment on Andrews's retaliation and interference claims is **DENIED**.

### D. Whistleblower Claim

The School Board argues that Andrews's whistleblower claims should be dismissed because she fails to identify any corroborating evidence, failed to provide evidence that she advised anyone about the violation, and failed to show evidence that she refused to participate in a prohibited practice or that she was fired because of it.[72] Andrews asserts that she advised the School Board that an employment act or practice violated applicable state law, and that the School Board "engaged in 'reprisal' against Ms. Andrews, including termination of her employment and other discriminatory action."[73]

Under the Louisiana Whistleblower Statute, an employer may not take reprisal against its employee who directs attention to the employer's violations of law.

---

[72] [Doc. No. 23-1, p. 24].
[73] [Doc. No. 28-1, p. 24].

*See* LA. REV. STAT. § 23:967 (2025). Section 23:967 clearly provides that, in order to assert a claim under the Louisiana Whistleblower statute, the employee must have advised his employer of a violation of state law prior to his termination. *Id.* at § 967(A)(1) ("An employer shall not take reprisal against an employee who . . . *after advising the employer of the violation of law* . . . threatens to disclose a workplace act or practice that is in violation of state law." (emphasis added)); *Hale v. Touro Infirmary*, 886 So.2d 1210, 1216 (La.App. 4 Cir. 11/3/04) (noting that the plaintiff must establish that she advised her employer of the alleged violation of law and then threatened to disclose the violation, and, as a result of her threat, was fired).

Andrews identifies three counts within her whistleblower claim[74]:

1. Mrs. Donna Cranford improperly influenced Superintendent Fine to terminate Plaintiff[']s employment in violation of La. R.S. 17:81(P).
   . . . .
2. Superintendent Fine arbitrarily decrease[d] Rhonda Davis's pay after the parties agreed upon compensation pursuant to the compensation schedule . . . in violation of La. R.S. 17:422.6.
   . . . .
3. Superintendent Fine advanced payment to Mrs. Rebecca Andrews . . . in violation of La. Const. Art. VII 14§14.

As to Andrews's first contention of violation of state law, it is undisputed that Andrews failed to advise the School Board that the allegation was a violation of state law. In fact, during Andrews's deposition, she stated that Fine told her that the Board was "pressuring [Fine] to make a decision" regarding Andrews's termination.[75] Thus,

---

[74] [Doc. No. 23-8, pp. 9–10].
[75] [Doc. No. 24, p. 78].

it is clear that Andrews failed to report this alleged violation. It is unclear how the School Board could take any reprisal against Andrews when the actual violation was never reported by her.

Regarding Andrews's second claim of a state law violation, the School Board presents evidence that no violation of La. R.S. 17:422.6 occurred because Jones's salary was neither reduced from the prior year nor decreased during the academic year. Instead, Jones's salary had been miscalculated due to an incorrect accounting of her years of experience, and the subsequent change was merely an adjustment to reflect the salary to which she was actually entitled. Andrews also failed to provide any evidence that she reported this alleged violation to the School Board. The Court agrees with the School Board and finds that Andrews has not shown she provided the required notice for this claim.

Lastly, Andrews argues that Rebecca was "paid for a month she shouldn't have been paid."[76] The records, however, show that Rebecca was paid for ten months, as her contract required. Because she was transitioning from a twelve-month position, her pay period began and ended earlier in order to prevent any interruption in her pay or retirement benefits. Thus, it is evident that Rebecca was not "paid for a month she shouldn't have been paid."[77] And in any event, there is no evidence that Andrews reported this alleged violation to the auditor. When directly asked, "Now, did you

---

[76] [Doc. No. 24, p. 91].
[77] [Id.].

report this to the auditor?" Fine stated, "I did not."[78] Moreover, there was no audit finding on the payment.

For the reasons stated above, the School Board Motion for Summary Judgment as to Andrews's whistleblower claims is **GRANTED**.

### E. Damages

The School Board asserts that all claims should be dismissed because "an essential element of any FMLA or Louisiana Whistleblower Statute claim is proof of damages," and Andrews has failed to produce any evidence of damages.[79] Initially, Andrews argued in her response that "she intends to prove her damages at trial."[80] Nearly two weeks after the School Board filed its reply, Andrews filed a supplemental memorandum, which supplemented her discovery with evidence of damages.[81] The School Board filed, and was granted, a motion for leave to file a response to Andrews's supplemental memorandum regarding damages.[82]

Although the School Board references several decisions granting summary judgment due to a lack of damages evidence, those cases arise from different claims, and only one pertains to the FMLA, a non-precedential 1997 ruling.[83] Accordingly, the Court finds it preferable to address this contention under the framework of FED. R. CIV. P. 26.

---

[78] [Doc. No. 24, p. 94].
[79] [Doc. No. 23-1, p. 28].
[80] [Doc. No. 28-1, p. 25].
[81] [Doc. No. 37].
[82] [Doc. Nos. 41, 43].
[83] *See Land v. Sheraton Tunica Corp.*, No. 2:96CV109-B-B, 1997 WL 406283, at *1 (N.D. Miss. May 20, 1997).

Under FED. R. CIV. P. 26(a)(1)(A)(iii), Andrews had a duty to provide a computation of damages to the School Board and failed to do during the discovery period. And Rule 26(e) required Andrews to supplement initial disclosures in a "timely manner." Rule 37(c) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(C)(1). In evaluating this, the Court's look to: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A & M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Clearly, Andrews's purported supplemental evidence is important to her case as proof of lost salary, wages, or other benefits is evidence of damages in FMLA cases. *See Henderson v. Boise Paper Holding, LLC*, No. A-13-CA-912-SS, 2015 WL 6760483 at *3 (W.D. Tex. Nov. 5, 2015) (quoting *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 930 (5th Cir. 1999) ("The FMLA does not provide for nominal damages, as FMLA recovery is only "limited to an amount equal to the lost salary or wages, lost employment benefits, or any other 'other compensation' that is indicative of a quid pro quo relationship between an employer and an employee … the [FMLA] does not provide for the recovery of general or consequential damages")). Nevertheless, the significance of damages evidence does not supersede or excuse the obligation of timely

26

disclosure, which is why the Court is to look at all factors. *See Sentilles v. Huntington Ingalls Inc.*, No. CV 21-958, 2024 WL 4907224 at *2 (E.D. La. Oct. 31, 2024). Andrews attributes her untimely disclosures to her father's deteriorating health. Although the Court is sympathetic to the familial difficulties she has faced, her father's illness does not constitute a sufficient basis to excuse her failure to timely produce the documents. Andrews's untimely submission has resulted in substantial prejudice to the School Board. Most notably, the Board has not been afforded a reasonable opportunity to review the documents, which remain unsworn and unauthenticated.[84] Although Andrews now proposes to make herself available for an additional deposition concerning damages, this case is over two years old, the trial is less than three months away, discovery has passed, the matter is trial-ready, and all relevant deadlines expired six months ago.

"District courts must have the power to control their dockets by holding litigants to a schedule." *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019). Consequently, Andrews shall not use the untimely *supplemented* evidence for proof of damages at trial. Nevertheless, the Court **DENIES** the Motion for Summary Judgment to dismiss all claims on the basis of damages, as uncertainty remains regarding the existence of any additional evidence of Andrews's purported damages.

## III.    CONCLUSION

For the reasons set forth above,

---

[84] [Doc. Nos. 37-1 and 37-2].

**IT IS ORDERED** that the School Board's Motion [Doc. No. 23] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the School Board's Motion for Summary Judgment as to Andrews's Louisiana Whistleblower claims is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the School Board's Motion is **DENIED** as to Andrews's claims of retaliation and interference under FMLA.

MONROE, LOUISIANA, this 24th day of November 2025.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE